## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

LAFI JAFARI, an individual, and
MM&L INTERNATIONAL CORPORATION,
a Nebraska corporation,

          Plaintiffs,

   vs.

HOUSING AUTHORITY OF THE CITY OF
OMAHA, a governmental subdivision of the
State of Nebraska,

          Defendant.

**8:17CV436**

**FINDINGS AND
RECOMMENDATION**

     This matter is before the Court on the Motion to Remand (Filing No. 17) filed by Plaintiffs, Lafi Jafari ("Jafari") and MM&L International Corporation ("MM&L"), and the Motion to Dismiss (Filing No. 9) filed by Defendant, the Housing Authority for the City of Omaha ("OHA"). For the following reasons, the undersigned magistrate judge recommends that the Motion to Remand be granted, and the Motion to Dismiss be denied as moot.

## BACKGROUND

     Defendant, the Housing Authority for the City of Omaha ("OHA"), participates as a public housing agency ("PHA") in the U.S. Department of Housing and Urban Development's ("HUD") Housing Choice Voucher Program, commonly known as the Section 8 housing program.[1]  MM&L, and its CEO and majority shareholder, Jafari, allege that they entered into Section 8 Housing Assistance Payment Contracts ("HAP Contracts") with OHA for certain properties owned by Jafari and MM&L. HUD drafts HAP Contracts, which are then entered into between a PHA and an owner. Use of the HAP Contract is required by HUD, and modifications of the HAP Contract are not permitted.  (Filing No. 1-1 at pp. 3, 15); see 24 C.F.R. §§ 982.162(a)(2) and 982.451(a)(1).  The HAP Contract provides that it "shall be interpreted and implemented in accordance with all statutory requirements, and with all HUD requirements,

---

[1] 42 U.S.C. § 1437f.

including HUD program regulations at 24 Code of Federal Regulations Part 982." (Filing No. 1-1 at p. 22).

On February 27, 2017, HUD notified Jafari that he was immediately suspended from participating in procurement and nonprocurement transactions as a participant or principal with HUD.  HUD also suspended MM&L because Jafari was its principal within the meaning of the applicable HUD regulations.  (Filing No. 1-1; Filing No. 23-1); see 2 C.F.R. § 180.995.  HUD's stated reason for Jafari's suspension was due to the filing of an Indictment against him in the United States District Court for the District of Nebraska, which charged him with crimes arising out of his alleged participation in a conspiracy to defraud the Section 8 housing program.  The Indictment accuses Jafari of conspiring with another to corruptly provide or offer monetary bribes to OHA employees so that they would provide favorable official actions to him or MM&L.  (Filing No. 23-1).  Plaintiffs allege the suspensions were unlawful and are "being actively challenged through appropriate administrative channels." (Filing No. 1-1 at p. 3).

Plaintiffs acknowledge that as a result of the suspensions, applicable federal regulations prohibited OHA from entering into new HAP Contracts or renewing expired HAP Contracts with Plaintiffs.  (Filing No. 1-1 at p. 4); see 24 C.F.R. § 982.306; 2 C.F.R. § 180.305.  However, Plaintiffs allege that on March 2, 2017, OHA notified Plaintiffs that it was suspending further housing assistance payments to Plaintiffs on existing HAP contracts, effective March 1, 2017. Plaintiffs allege that OHA also encouraged Plaintiffs' tenants under existing HAP Contracts to take their vouchers to alternative properties prior to the expiration of their lease terms, "effectively terminating those HAP Contracts."  Plaintiffs allege that OHA did not have authority under applicable Section 8 regulations or the terms and conditions of the parties' existing HAP Contracts to suspend payments or terminate the existing HAP Contracts.  Plaintiffs further allege that their suspension by HUD did not breach the terms of the HAP Contracts.  (Filing No. 1-1 at p. 4).  Plaintiffs allege that on April 21, 2017, they complained to OHA about such suspension of payments and termination of HAP Contracts, and demanded payment under the existing contracts, but OHA has refused to pay.  (Filing No. 1-1 at p. 5).

On October 5, 2017, Plaintiffs filed a Complaint against OHA in the District Court for Douglas County, Nebraska.  (Filing No. 1-1).  Plaintiffs' Complaint requests a "declaratory judgment" for breach of contract and asks the Court to find that: (1) "Jafari's suspension by HUD did not constitute a breach of the terms and conditions of the HAP Contracts by Plaintiffs;"

(2) OHA breached existing HAP Contracts "by failing to make housing assistance payments when due;" (3) "OHA was not otherwise legally permitted to suspend housing assistance payments to Plaintiffs;" and that (4) "Plaintiffs are entitled to all suspended housing assistance payments plus interest." (Filing No. 1-1 at p. 5).

Plaintiffs also seek a "declaratory judgment" for improper termination and ask the Court to find that: (1) OHA improperly terminated HAP Contracts by compelling tenants in certain properties to vacate in advance of the contractual renewal date; (2) the improper termination was a breach of the terms and conditions HAP Contracts; that (3) "2 C.F.R. § 180.310[2] did not authorize OHA to terminate any existing HAP Contract with Plaintiffs;" and that (4) "OHA is liable to Plaintiffs for the housing assistance payments due through the end of the term of each HAP Contract" as identified in Plaintiffs' attachments to their Complaint. (Filing No. 1-1 at pp. 6-7).

After Plaintiffs filed their Complaint, an administrative hearing was held on October 10, 2017, regarding the Plaintiffs' challenge of HUD's February 27, 2017, suspension. Following the hearing, on October 20, 2017, Plaintiffs and HUD entered into an Administrative Agreement. (Filing No. 23-2). Pursuant to the agreement, "in order to provide residential stability for the approximately thirty-one (31) Section 8 tenants and their families currently residing in the properties of either MM&L or Jafari," HUD represented it "will instruct OHA to refrain from terminating these HAPs pending the outcome of the criminal proceedings and lift the OHA suspension as it pertains to these HAP Contracts." (Filing No.23-2 at p. 2). HUD lifted and terminated the February 27, 2017, suspension imposed on MM&L and Jafari, provided they continue to be truthful and comply with the terms of the administrative agreement. (*Id.*).

OHA was served with the Complaint on October 12, 2017, and on November 9, 2017, removed the case to this court, asserting in the notice of removal that the Court has federal question jurisdiction. (Filing No. 1). After removal, OHA filed a motion to dismiss for Plaintiffs' failure to join the HUD as a necessary party pursuant to Fed. R. Civ. P. 12(b)(7) and 19(a). (Filing No. 9). On December 6, 2017, Plaintiffs moved to remand the case to state court,

---

[2] This section provides, "You as a participant may continue covered transactions with an excluded person if the transactions were in existence when the agency excluded the person. However, you are not required to continue the transactions, and you may consider termination. You should make a decision about whether to terminate and the type of termination action, if any, only after a thorough review to ensure that the action is proper and appropriate." 2 C.F.R. § 180.310(a).

arguing that their claims for declaratory relief only allege state law causes of action that do not implicate a substantial question of federal law.[3]

## ANALYSIS

Under 28 U.S.C. § 1441, "[a] defendant's removal of a case to federal court is appropriate 'only if the action originally could have been filed there.'" *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 444 (8th Cir. 2010)(quoting *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 619 (8th Cir. 2010)).  After removal, "[a] plaintiff may move to remand the case if the district court lacks subject matter jurisdiction." *Id.*  (citing 28 U.S.C. § 1447(c)). "[T]he party seeking removal has the burden to establish federal subject matter jurisdiction[.]" *Cent. Iowa Power Co-op. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009)(internal citations omitted).  "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)(quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 112-113 (1936)).  "[T]he plaintiff is master of his claim and may avoid federal removal jurisdiction by exclusive reliance on state law." *Moore v. Kan. City Pub. Sch.*, 828 F.3d 687, 691 (8th Cir. 2016)(quoting *M. Nahas & Co., Inc. v. First Nat'l Bank of Hot Springs*, 930 F.2d 608, 611 (8th Cir. 1991)).  "[A]ll doubts about federal jurisdiction must be resolved in favor of remand." *Moore*, 828 F.3d at 691 (quoting *Cent. Iowa Power Coop*, 561 F.3d at 911-12).

OHA acknowledges that state law creates the basis for Plaintiffs' claims.[4]  Nevertheless, OHA argues that Plaintiffs' Complaint falls into a "special and small category of cases" forming the basis of federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' state law

---

[3] After the pending motions were filed and briefed, upon a joint request from the parties, the Court stayed the case so that the parties could conduct settlement negotiations.  Thereafter, the Court was advised that the parties did not reach a settlement and the stay was lifted.  (Filing No. 26).

[4] Although the Complaint alleges two claims for "declaratory judgment" for breach of contract and for improper termination, such claims are ones for breach of contract.  Plaintiffs ask the court to declare that OHA breached the terms of the parties' contracts and that Plaintiffs did not breach the terms of the contracts, and request monetary relief as owed under the contracts.  (Filing No. 1-1 at pp. 5-7).  See, e.g., *MASTR Asset Backed Securities Tr. 2006-HE3 ex rel. U.S. Bank Nat'l Ass'n v. WMC Mortg., LLC*, 983 F. Supp. 2d 1104, 1116 (D. Minn. 2013) ("When a request for a declaratory judgment alleges . . . duties and obligations under the terms of a contract and asks the court to declare those terms breached[, it] is nothing more than a petition claiming breach of contract.").

claims "'necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance' of federal and state power." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 1570 (2016)(quoting *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)); see *Gunn v. Minton*, 568 U.S. 251, 258 (2013)(restating the standard in *Grable* as a four-part test: "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."). Specifically, OHA argues a federal question is presented because Plaintiffs' state law claims implicate OHA's implementation of the federal Section 8 housing program, the HAP contracts at issue were drafted by HUD and must be interpreted and implemented in accordance with federal regulations, and because Plaintiffs specifically request a declaration that the applicable federal regulations did not authorize OHA's termination of the contracts.

Although it is a close call, the undersigned magistrate judge finds that this case does not fall within the "special and small category of cases" described by the Supreme Court in *Grable*, particularly when considering that "[A]ll doubts about federal jurisdiction must be resolved in favor of remand," *Moore*, 828 F.3d at 691 (quoting *Cent. Iowa Power Coop*, 561 F.3d at 911-12), and when considering that both the Supreme Court and the Eighth Circuit have narrowly construed *Grable*'s application. See, e.g., *Grable,* 545 U.S. at 313 (recognizing its precedent that "sh[ies] away from the expansive view that mere need to apply federal law in a state-law claim will suffice to open the 'arising under' door"); *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006)(emphasizing that *Grable* "exemplifies" a "slim category" of cases); *Great Lakes Gas Transmission Ltd. v. Essar Steel Minnesota LLC*, 843 F.3d 325, 332 (8th Cir. 2016)(recognizing the Supreme Court's emphasis on the narrowness of *Grable*'s holding when concluding federal issue was not substantial enough to confer jurisdiction). In this case, while Plaintiffs' state law claims may "necessarily raise[]" an "actually disputed" federal issue, the federal issue is not "substantial and . . . capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

First, the undersigned finds that Plaintiffs' state law claims do necessarily raise an actually disputed federal issue. See *Grable*, 545 U.S. at 314. Both of Plaintiffs' claims arise out of the HAP contracts between them and OHA, and actions taken by OHA that Plaintiffs

specifically allege were not authorized by the HAP contracts or the applicable federal regulations. The HAP contract is a standard form prescribed HUD and must be interpreted and implemented in accordance with Section 8 statutory requirements and regulations, and with any HUD requirements. (Filing No. 1-1 at pp. 3, 15); see, *Evergreen Square of Cudahy v. Wis. Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 467-68 (7th Cir. 2015)("[T]he HAP contracts at issue are ones to which HUD, a federal agency, prescribes both the form and content. The HAP contracts must be approved by HUD and their terms are administered pursuant to federal laws and regulations."). Moreover, Plaintiffs specifically request a declaration that "2 C.F.R. § 180.310 did not authorize OHA to terminate any existing HAP Contract with Plaintiffs" as a result of HUD's suspensions of Plaintiffs, and that OHA therefore breached the HAP contracts. In other words, Plaintiffs' claims hinge on whether the applicable federal regulations and the HAP contracts permitted OHA to terminate the existing contracts with Plaintiffs. The Court's resolution of Plaintiffs' claims will require interpretation of the HUD-prescribed HAP contract and application of federal regulations to the facts of this case, which is "the central point of dispute." *Gunn*, 568 U.S. at 259.

Nevertheless, the undersigned magistrate judge concludes that the third part of the *Grable* test is not met because "the federal issue in this case is not substantial in the relevant sense." *Gunn*, 568 U.S. at 259-60 (finding federal issue was not substantial, even though the "resolution of a federal patent question" was "necessary" to a plaintiff's legal malpractice claim for mishandling of a patent case). In this case, whether the applicable federal regulations and the HAP contracts permitted OHA to terminate Plaintiffs' existing contracts is certainly significant to the parties. However, "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit[.]" *Id.* at 260. Instead, "[t]he substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Id.*

Courts in other jurisdictions have applied the four-part test in *Grable* to conclude federal question jurisdiction existed over disputes between private parties and public housing agencies arising under HAP contracts when those disputes impacted the functioning of the Section 8 program on a nationwide scale. In *One & Ken Valley Housing Group v. Maine State Housing Authority*, 716 F.3d 218 (1st Cir. 2013), the First Circuit determined it had jurisdiction over state law breach of HAP contract claims brought by Section 8 housing owners against a local housing authority for the housing authority's refusal to grant the owners certain annual rent increases

- 6 -

under their HAP contracts.  *Id.* at 219-20.  In that case, however, the local housing authority made the rent adjustments pursuant to a Congressional amendment to the Section 8 housing statute and a notice promulgated by HUD containing "detailed guidelines for implementing the . . . statutory changes." *Id.* at 222.  Importantly, the First Circuit considered that the issue before it "present[ed] a pure question of law that will govern numerous cases nationwide," the outcome of which would "dictate whether HUD and/or the public housing agencies that administer Section 8 must pay millions of dollars in additional rents to landlords, which—in turn—could require the agencies to scale back the scope of the Section 8 program." *Id.* at 225.  Under the circumstances, "the federal government ha[d] an overwhelming interest in seeing the issue decided according to a uniform principle." *Id.* (citing *Price v. Pierce*, 823 F.2d 1114, 1119-20 (7th Cir. 1987)).  See *Municipality of Mayaguez v. Corporacion Para el Desarrollo del Oeste, Inc.*, 726 F.3d 8, 9-10 (1st Cir. 2013)(finding federal issue was not substantial in a breach of contract claim arising out of the defendant's failure to comply with HUD regulations, distinguishing its holding in *One & Ken Valley*, stating, "[U]nlike *Grable,* the resolution of this case will have no impact on the ability of HUD or any other federal agency to carry out its business.").

Likewise, the Seventh Circuit in *Evergreen Square of Cudahy v. Wisconsin Housing & Economic Development Authority*, 776 F.3d 463 (7th Cir. 2015), concluded federal question jurisdiction existed over a "remarkably similar" action for breach of HAP contract against a local housing authority after it failed to grant annual rent increases pursuant to the same Section 8 statutory amendment and related regulations and HUD notice at issue in *One & Ken Valley*.  The Seventh Circuit found the case fit within the "special and small category of cases" described in *Grable* because the "only disputed issues involved the proper interpretation of Section 8 of HUD's implementing guidance[;]" "[s]imilar lawsuits have been brought nationwide by Section 8 property owners; and those lawsuits, "[i]n the aggregate, . . . have the potential to substantially influence the scope and success of the Section 8 program." *Id.* at 467-68.  Therefore, the Seventh Circuit concluded that "the federal government has a strong interest in these issues being decided according to uniform principles." *Id.* at 468.  *Accord*, *BFNO Properties, LLC v. Hous. Auth. of New Orleans*, 2015 WL 1737844, at *4 (E.D. La. Apr. 16, 2015)(discussing *One & Ken Valley* and *Evergreen Square of Cudahy* to conclude it had federal question jurisdiction over similar state law breach of contract claims against local housing authority for its failure to approve annual rent increases in accordance with same HUD regulations); *Mack Bros. v. Maine*

*State Hous. Auth.*, 2010 WL 4193052, at *9 (D. Me. Oct. 19, 2010), *report and recommendation adopted*, 2010 WL 4869790 (D. Me. Nov. 30, 2010)(finding federal jurisdiction existed over similar claims).

Unlike the federal issue implicated in the above cases, the instant lawsuit is not one of many similar lawsuits that will "govern numerous cases nationwide." See *One & Ken Valley*, 716 F.3d at 225. Resolution of Plaintiffs' claims will "have no impact on the ability of HUD or any other federal agency to carry out its business," nor will resolution of this case meaningfully affect the federal administration of the Section 8 program. See *Municipality of Mayaguez*, 726 F.3d at 9-10. Instead, Plaintiffs' claims in this case are, at their core, a simple claim for breach of contract presenting a "fact-bound and situation-specific" situation that the Supreme Court has found insufficient to confer jurisdiction. See *Empire Healthchoice*, 547 U.S. at 681; see also, *Municipality of Mayaguez*, 726 F.3d at 14 ("Though the ultimate question in [the plaintiff's] contract claim is whether [the defendant] failed to comply with federal regulations, and thereby breached its contract, this dispute is the sort of 'fact-bound and situation-specific' claim whose resolution is unlikely to have any impact on the development of federal law.").

Other courts have declined to find federal jurisdiction exists over HAP contractual disputes brought by private parties against local housing authorities. For example, in *Kunkler v. Fort Lauderdale Hous. Auth.*, 764 F. Supp. 171, 172 (S.D. Fla. 1991), the district court concluded it did not have jurisdiction over a Section 8 housing owner's action against a local housing authority and HUD after the local housing authority terminated of the owner's rent subsidies for the owner's failure to properly maintain the premises in accordance with federal regulations. The court concluded, "The mere fact that plaintiff was a participant in a program created by the federal government, or that HUD regulations apply to the contracts at issue does not require the pivotal interpretation of federal law necessary to confer jurisdiction." *Kunkler*, 764 F. Supp. at 174.

Similarly, in *1610 Corp. v. Kemp*, 753 F. Supp. 1026, 1030 (D. Mass. 1991), the district court concluded that it did not have jurisdiction over a Section 8 housing owner's breach of HAP contract claim against a local housing authority for wrongful reduction of Section 8 housing assistance payments. In that case, the court concluded that, "[a]lthough federal statutes and regulations may be implicated to some extent," the housing owner's claims "boil[ed] down to a breach of contract action arising from HUD's reduction in contract rents from the amount

originally specified in the HAP contract" and only required "an interpretation of the HAP contract between the plaintiff and the [local housing authority] and the . . . contract between the [local housing authority] and HUD." *1610 Corp.*, 753 F. Supp. at 1031-32.  The court reasoned that "the fact that a contract is subject to federal regulation does not establish that its interpretation and aspects of its performance are governed by federal law. . . . [and] the mere fact that a contract involves a pre-printed form prescribed by HUD[] does not signify that a controversy over its terms arises under federal law."  *Id.* at 1030.  See also, *Khan v. Bland*, 630 F.3d 519, 531 (7th Cir. 2010)(suggesting a state law breach of contract action is the appropriate method for a private party to assert that a state housing agency wrongfully terminated a HAP contract); *N. Jefferson Square Assocs., L.P. v. Virginia Hous. Dev. Auth.*, 32 F. App'x 684, 687 (4th Cir. 2002)(affirming remand of contract claim because "it [was] apparent from the face of the amended complaint that the dispute between [the housing owner] and [the local housing authority] turn[ed] upon the interpretation of the Mortgage Deed of Trust, the HAP Contract, and related documents, a question of state contract law."); *Vill. W. Assocs. v. Rhode Island Hous. & Mortg. Fin. Corp.*, 618 F. Supp. 2d 134, 140-41 (D. R.I. 2009)("There is no dispute that in general terms, federal law provides a backdrop for this dispute.  But invocation of federal statutes, regulations or housing contracts that are printed and regulated by HUD--in and of themselves--all short of conferring § 1331 jurisdiction.").

The above cases demonstrate that the substantiality of a federal issue is not assumed merely because it is necessary and important to the parties in a particular case.  Instead, "[S]omething more, demonstrating that the question is significant to the federal system as a whole, is needed."  *Gunn*, 568 U.S. at 564.  The undersigned magistrate judge finds that the federal issue in this case is not significant to the federal system as a whole, or to the federal administration of the Section 8 program, and therefore not "substantial" in the manner required to confer federal question jurisdiction.

Additionally, the undersigned magistrate judge also finds the fourth part of the *Grable* test is not met because exercise of jurisdiction would disrupt the "'congressionally approved balance of federal and state judicial responsibilities.'"  *Great Lakes Gas Transmission*, 843 F.3d at 333 (quoting *Grable*, 545 U.S. at 314).  Accepting Defendant's arguments in this case would mean that nearly all HAP contract disputes between a private party and a local housing authority would end up in federal court, since such disputes would almost always require the court to

- 9 -

interpret the HUD-prescribed HAP contract and federal regulations incorporated therein. There is no suggestion that Congress intended for such a result.

Finally, Plaintiffs request an award of attorney fees and costs incurred as a result of the removal pursuant to 28 U.S.C. § 1447(c). The undersigned magistrate judge finds that an award of attorney's fees and costs is not warranted as Defendant presented a colorable argument and had an objectively reasonable basis for seeking removal. See *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005) ("[A]bsent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal.").

In consideration of the above, the undersigned magistrate judge finds that this court lacks federal question jurisdiction. Because this court lacks subject matter jurisdiction, the undersigned magistrate judge further recommends that Defendant's Motion to Dismiss for failure to join HUD as a necessary party (Filing No. 9) be denied as moot. Accordingly, the undersigned magistrate judge recommends that this case be remanded to the District Court for Douglas County, Nebraska. Upon consideration,

**IT IS HEREBY RECOMMENDED** to Chief United States District Court Judge Laurie Smith Camp that:

1. Plaintiffs' Motion to Remand (Filing No. 17) be granted, and that this case be remanded to the District Court for Douglas County, Nebraska; and

2. Defendant's Motion to Dismiss (Filing No. 9) be denied as moot.

Dated this 15th day of June, 2018.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge

**ADMONITION**

A party may object to a magistrate judge's findings and recommendation by filing an objection within fourteen (14) days after being served with a copy of the findings and recommendation. NECivR 72.2. Failure to timely object may constitute a waiver of any objection.